PHILLIP A. TALBERT
United States Attorney
CHRISTINA MCCALL
Assistant United States Attorney
CHELSEY McKINSEY
Law Clerk
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGIO ROMAN BARRIENTOS,

Defendant.

CASE NO. 2:16-CR-00046-TLN-CKD

GOVERNMENT'S OPPOSITION TO DEFENDANT SERGIO BARRIENTOS' MOTION PURSUANT TO 28 U.S.C. § 2255

**GOVERNMENT'S OPPOSITION TO DEFENDANT SERGIO BARRIENTOS' MOTION PURSUANT TO 28 U.S.C. § 2255**

## TABLE OF CONTENTS


I. INTRODUCTION....1

I. FACTUAL BACKGROUND....2

II. PROCEDURAL BACKGROUND....5

- A. District Court Proceedings....5
- B. Ninth Circuit Court of Appeals Proceedings....6

III. ARGUMENT....7

- A. Motions Pursuant to 28 U.S.C. § 2255....7
- B. Barrientos' Claim of Alleged *Brady* Violations is Meritless....8
  - 1. Barrientos has failed to allege that the government withheld any evidence which was favorable to the accused....8
  - 2. Barrientos cannot properly allege a *Brady* violation was made by his own counsel....10
- C. Barrientos Cannot Show That Trial and Appellate Counsel's Performance Was Not Based on Reasonable Professional Judgment....11
  - 1. The standard for ineffective assistance of counsel claim....11
  - 2. Trial counsel's decision not to obtain detailed reports of the defaulted $10 million, not to disclose specific evidence to the court, and not to provide the appeal counsel with the computer hard drive did not fall outside *Strickland's* wide range of professionally competent assistance....11
    - a. Barrientos is not identically situated to any other defendants related to this case....12
  - 3. Appellate counsel exercised reasonable professional judgment in his representation of Barrientos....13
  - 4. The actions or omissions of trial counsel as alleged by Barrientos did not affect the outcome of the judgment....14
- D. Barrientos' Miscellaneous Claims Are Meritless....16
- E. An Evidentiary Hearing is Unnecessary Because Barrientos' Conclusory Allegations Are Insufficient to Warrant a Hearing....17

IV. CONCLUSION....17

# TABLE OF AUTHORITIES

## CASES

*Barker v. Fleming*,
423 F.3d 1085 (9th Cir. 2005) .......... 8

*Brady v. Maryland*,
373 U.S. 83 (1963) .......... passim

*Brecht v. Abrahamson*,
507 U.S. 619 (1993) .......... 7

*Davis v. United States*,
417 U.S. 333 (1974) .......... 7, 11

*Eggeleston v. United States*,
798 F.2d 374 (9th Cir. 1986) .......... 11

*Kimmelman v. Morrison*,
477 U.S. 365 (1986) .......... 14

*Harrington v. Richter*,
562 U.S 86 (2011) .......... 14

*Sanchez v. United States*,
50 F.3d 1448 (9th Cir. 1995) .......... 8

*Smith v. Stewart*,
140 F.3d 1263 (9th Cir. 1998) .......... 11

*Strickland v. Washington*,
466 U.S. 668 (1984) .......... passim

*United States v. Birtle*,
792 F.2d 846 (9th Cir. 1988) .......... 14

*United States v. Blaylock*,
20 F.3d 1458 (9th Cir. 1994) .......... 17

*United States v. Cochrane*,
985 F.2d 1027 (9th Cir. 1993) .......... 11

*United States v. Hamilton*,
792 F.2d 837 (9th Cir. 1986) .......... 11

*United States v. Harshman,*
(9th Cir. Sep. 2, 2021, No. 19-35131) 2021 U.S. App. LEXIS 26496 .......... 8

*United States v. Hearst*,
638 F.2d 1190 (9th Cir. 1980) ........................................ 17

*United States v. McMullen*,
98 F.3d 1155 (9th Cir. 1996) ........................................ 14, 17

*United States v. Schaflander*,
743 F.2d 714 (9th Cir. 1984) ........................................ 11

## Statutes

18 U.S.C. § 3161(c)(1)........................................ 15

18 U.S.C. § 3582(c)(1)(A) ........................................ 6, 7

28 U.S.C. § 2255........................................ 1, 7, 17

28 U.S.C. § 2255(a) ........................................ 7

PHILLIP A. TALBERT
United States Attorney
CHRISTINA MCCALL
Assistant United States Attorney
CHELSEY McKINSEY
Law Clerk
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

SERGIO ROMAN BARRIENTOS,

Defendant.

CASE NO. 2:16-CR-00046-TLN-CKD

GOVERNMENT'S OPPOSITION TO DEFENDANT SERGIO BARRIENTOS' MOTION PURSUANT TO 28 U.S.C. § 2255

## I. INTRODUCTION

The government respectfully requests that the Court deny Sergio Barrientos' 28 U.S.C. § 2255 motion and find that Barrientos has failed to meet his burden as to both his claim of unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant and his claim ineffective assistance of counsel. The defendant claims that the prosecution failed to disclose evidence favorable to the defendant in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). However, he fails to allege (1) the existence of any evidence the government failed to disclose, and (2) whether the evidence is material. The defendant further claims that he failed to receive effective assistance of counsel both before he entered his guilty plea and upon appeal. However, Barrientos failed to show that (1) his defense counsel's performance was deficient, and (2) that the deficient performance prejudiced the

defense. Therefore, his claims should be dismissed because of his knowing and voluntary plea of guilty.

In the alternative – and for the defendant's claim that does relate to whether he should have pleaded guilty, his motion should be denied because the claims are vague, conclusory, and unsupported by evidence. Defendant fails to demonstrate incompetence or prejudice by his defense counsel; therefore, the defendant does not state a claim upon which relief can be granted.

## I. FACTUAL BACKGROUND

On January 12, 2018, Barrientos entered a guilty plea to Count 1 of the Superseding Indictment without a plea agreement. ECF No. 77. Barrientos admitted under oath that he knowingly and intentionally agreed, combined, and conspired with others to execute a material scheme which defrauded a financial institution and a federally insured financial institution. ECF No. 77 at 14-21. The parties agreed that the factual allegations in Count 1 of the Superseding Indictment (ECF No. 8) were all true, and the District Court asked the prosecutor to read those allegations into the record as the factual basis for the defendant's guilty plea. *Id.* at 14. The following paragraphs are derived from the transcript of the change-of-plea hearing on January 12, 2018.

Defendant Sergio Roman Barrientos was a resident of Poway, California. Defendant Zalathiel Aguila was a resident of Vallejo. Omar Anabo, charged in a related case, was a resident of Hercules. Downey Savings & Loan Association was a financial institution, with deposits then insured by the Federal Deposit Insurance Corporation, or FDIC, and which engaged in, and the activities of which affected, interstate commerce. Capital Access, LLC, was a company based at 1301 Tennessee Street in Vallejo, and was operated by Barrientos, Aguila and Anabo. Sayraw Holdings was the name of a fictitious entity holding bank accounts, including a checking account, at Washington Mutual Bank, ending in 2333, that was controlled by Mr. Barrientos. Quest Financial Services, Inc. was a mortgage brokerage company based in Vallejo, that was operated by Mr. Anabo.

Beginning in or about September 2004, and continuing through at least in or about February 2008, in the State and Eastern District of California and elsewhere, the defendants Sergio Roman Barrientos and Zalathiel Aguila, and others, did knowingly and intentionally agree, combine, and conspire to execute, one, through the use of wire communications and signals in interstate commerce, a material scheme to defraud and to obtain money and property by means of material false and fraudulent

pretenses, representations, promises, and the concealment of material facts, affecting a financial institution, in violation of Title 18, United States Code, Section 1343, and, two, a material scheme to defraud and to obtain moneys, funds, and credits from federally insured financial institutions by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344(1).

In furtherance of that conspiracy, Mr. Barrientos, Aguila and Anabo, ("the conspirators"), employed the following manner and means, among others: Capital Access, through the conspirators and its employees, would use a notice of default list to target homeowners nearing default with advertising and solicitations by mail, phone, or in person, regarding the benefits of the Capital Access Keep Your Home foreclosure rescue program.

As part of the solicitation, the conspirators would tell homeowners who were facing default that the Keep Your Home program would bring in a qualified investor to help the homeowners avoid foreclosure, keep the homeowners' homes, and repair the homeowners' credit during a two-year period. The conspirators generally told the homeowners that bringing in a qualified investor allowed the conspirators to access the homeowners' equity, which would then be used to make housing payments or settle debts on the homeowners' behalf during the first year of the two-year program. Meanwhile, the homeowners would save and repair their credit, and would be responsible for making housing payments to Capital Access during the second year of the program. The conspirators told the homeowners that their home would be placed in a trust during the program, and that at the end of the program the homeowners would have the opportunity to regain their home in full, and the involvement of Capital Access would cease.

During the homeowner recruitment process, the conspirators would make materially false statements and omissions and conceal material facts in convincing the homeowners to sign over title and all equity in their homes. These false statements included, among others, the following: That (1) the homeowner would not be selling his or her home, (2) the homeowner's equity would be used only for the homeowner's housing payments and other disclosed debt repayments, (3) the property would be placed in a trust to protect the homeowners, (4) at the conclusion of the two-year program, Capital Access would return the remaining equity to the homeowners, and/or (5) at that point the homeowner would

refinance their home and regain full ownership without further involvement of Capital Access.

In fact, these statements to the homeowners were not true. Instead, first, the conspirators executed a sale of the homeowner's property to a straw buyer. Second, the conspirators commingled the homeowner's equity from the sale into Sayraw Holdings and Capital Access bank accounts, and used that equity not only for the homeowner's housing payments and debts but also for, among other things, personal expenses, operating costs, down payments for new properties entering the scheme, and other costs unrelated to the homeowners. Third, the conspirators did not create trusts for the properties. Rather, at the conclusion of the transaction, title to the home was held by the straw buyer, or in some occasions was held by a holding company without the advertised protections for the homeowners. Equity from the home was never placed in a trust. Fourth, the conspirators did not return equity to the homeowners at the conclusion of the program. Finally, the conspirators knew that at the conclusion of the two-year program, it was highly unlikely that the homeowners would qualify for a new loan and nearly impossible that the homeowners would regain full ownership of their home, but concealed these realities from the homeowners.

In addition to recruiting homeowners, the conspirators also recruited straw buyers. The straw buyers were individuals with good credit who would act as buyers for the homes. In so doing, the straw buyers would be the loan applicants to the banks. The conspirators conducted presentations and went door-to-door to solicit straw buyer enrollment, often from friends and family. During this recruitment, the conspirators told the straw buyers that they would be paid one percent of the purchase price of the home or a flat fee as payment for use of their name and credit score in obtaining a mortgage. In addition, the conspirators told the straw buyers that they would not be responsible for occupying the home, making mortgage payments, or contributing to the down payment for the purchase of the home. Finally, the conspirators advised the straw buyers that they could claim a tax deduction for the mortgage interest as if they were making the mortgage payments themselves.

At the direction of the conspirators, the straw buyers filled out loan applications sent to financial institutions, some of which were federally insured. Anabo or his employees served as the interviewer on the loan applications. The straw buyer, Anabo, his employees and the conspirators would make material false statements on the loan applications, knowing that the applications were going to financial

institutions. The straw buyer and interviewer would then sign the applications, verifying that they were accurate. These false statements included, among other things, the following: First, that the straw buyer intended to occupy the home as a primary residence. Second, that no part of the down payment was borrowed, and that the straw buyer was the source of the down payment.

In fact, these statements to the financial institutions were not true. Instead, the straw buyers never intended to occupy the homes as primary residences. The scheme involved the homeowners remaining in their homes. In addition, the entirety of the down payment came not from the straw buyers, but, at least in part, from bank accounts held by Capital Access and Sayraw Holdings. Based on, among other things, these false statements, federally insured financial institutions issued loans to the straw buyers and the property transactions closed. The equity realized from the home sales went not to the homeowner but to the conspirators. The federally insured financial institutions were exposed to a new and increased risk of loss.

In all, the conspirators caused approximately $27,025,635 in fraudulent home sales, involving at least 69 unique properties, caused financial institutions, some of which were then federally insured, to issue at least approximately $23,993,106 in fraudulently-obtained property loans, and caused an estimated actual loss to financial institutions of at least approximately $10,473,606. ECF 77 at 14-21.

## II. PROCEDURAL BACKGROUND

### A. District Court Proceedings

On April 14, 2016, a federal grand jury returned a Superseding Indictment charging Sergio R. Barrientos with six crimes relating to a material scheme to defraud both financial institutions and federally insured financial institutions, as well as conspiring to and making false statements on loan applications. ECF No. 8.

On January 12, 2018, Barrientos pleaded guilty to Count One of the Superseding Indictment, which charged him with conspiracy to commit wire fraud affecting a financial institution and bank fraud. Change of Plea Transcript, ECF No. 77. During the court proceeding, he swore, under oath, that he knowingly and intentionally conspired with others to execute a material scheme, through the use of wire communications, to defraud a financial institution and a federally insured financial institution by means of materially false and fraudulent pretenses, representation, and promises to obtain money,

property, funds, and credits. Id. During his guilty plea, the district court conducted a careful and thorough plea colloquy pursuant to Rule 11 and ultimately accepted the defendant's guilty plea. Id.

On November 2, 2018, the district court held a sentencing hearing. ECF No. 122 (sentencing hearing transcript). The Probation Officer recommended a 14-year prison sentence. ECF No. 106 (Amended Final PSR). After careful consideration of Barrientos' sentencing filings and oral argument which addressed defendant's objection to paragraphs 35 and 40 of the presentencing report and addressed defendant's request for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), the district court found that the defendant's Guidelines, as stated in the presentencing report, advised a minimum sentence of 14 years in prison and a maximum sentence of 30 years in prison. Judge Burrell exercised discretion and found that a downward variance was not appropriate in defendant's case. ECF No. 122 at 40. In explaining why he chose not to vary below the suggested range of imprisonment set forth in the Sentencing Guidelines, the judge noted the extensiveness of the defendant's involvement in the criminal scheme and the ability of the Bureau of Prisons' to "treat an individual that suffers from the ailments the defendant has in this case." Id. at 39-40.

Ultimately, the Court sentenced the defendant to 14 years in prison, emphasizing the Court's "concern promoting respect for the law, deterrence, and ensuring adequate consequence for criminal conduct." ECF No. 108 at 40. The Court concluded, based on the defendant's lack of criminal history and continuous health related issues, the low-end sentence pursuant to the sentencing guidelines would be sufficient to serve the ends of justice. Subsequently, the government dismissed all remaining counts (2-6) against the defendant. Id. at 44.

On November 4, 2020, represented by attorney Gene Vorobyov, the defendant requested a reduction of sentence under the First Step Act, arguing that he should be granted compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 205. After opposition by the government and many victims who had lost their homes through the defendant's and his conspirators' actions in the case, the defendant's motion was denied. ECF No. 212.

**B. Ninth Circuit Court of Appeals Proceedings**

On June 25, 2020, represented by appellate attorney Gene Vorobyov, Barrientos appealed his judgment and commitment, challenging the District Court's four-level leadership enhancement

application and the denial of a one-level downward variance for acceptance of responsibility; denial of his request for an evidentiary hearing; and compliance with Rule 32 of the Federal Rules of Criminal Procedure. The Court of Appeals affirmed the District Court's holding, finding that the court acted properly, within its discretion. ECF No. 182.

On November 17, 2021, Barrientos appealed from the District Court's order denying his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Court of Appeals found that the District Court did not abuse its discretion in denying the defendant's motion for compassionate release and affirmed the court's holding. ECF No. 233.

## III. ARGUMENT

The defendant's 28 U.S.C. § 2255 motion should be denied because his claims are meritless, and he fails to meet the burden of persuasion for each claim. These claims include Barrientos' assertions that there was a *Brady* violation by the government and by his trial counsel; that his trial counsel rendered ineffective assistance by (1) failing to conduct an adequate pretrial investigation, (2) failing to provide his appeal counsel with specific evidence, and (3) exchanging information with the prosecution in such a way which violated attorney-client confidentiality; and his appeal counsel failed to give him the opportunity to provide input regarding filings made with the court.

### A. Motions Pursuant to 28 U.S.C. § 2255.

Under 28 U.S.C. § 2255, a defendant may challenge a sentence on the ground that it violated the United States Constitution or the laws of the United States. Section 2255(a) states in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

To warrant relief, defendant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Defendant can only obtain relief if he has

shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

**B. Barrientos' Claim of Alleged *Brady* Violations is Meritless.**

In order to prevail on a *Brady* claim, the defendant must show (1) the prosecution suppressed evidence that (2) was favorable to the accused and (3) was material." *Barker v. Fleming*, 423 F.3d 1085, 1094 (9th Cir. 2005). Although materiality of evidence is usually measured by whether the failure to disclose the evidence "'undermines confidence in the outcome of the trial,' the issue in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *United States v. Harshman* (9th Cir. Sep. 2, 2021, No. 19-35131) 2021 U.S. App. LEXIS 26496, citing *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995).

1. **Barrientos has failed to allege that the government withheld any evidence which was favorable to the accused.**

Barrientos has failed to provide any facts or evidence which were not known by the court, the government, or the defendant during the proceedings in this case. In lieu of alleging withheld or undisclosed facts and evidence, Barrientos is arguing a misinterpretation of the evidence which was available and provided to all interested parties.

In paragraph 1 of his hand-written motion, Barrientos claims that he had no intent to commit wire fraud, but he was "merely complying with the instruction of [the] Escrow Officer" and he "wrote a book on mortgage acceleration and the idea of Capital Access is an extension of his book." ECF No. 236 at 5. However, the defendant knowingly and voluntarily pleaded guilty to Count 1, wire fraud affecting a financial institution and bank fraud. During his change of plea hearing, the government read aloud each element of this charge as to wire fraud including the third element, "the defendant acted with the intent to defraud; that is, the inten[t] to deceive or cheat." ECF No. 77 at 12. Subsequently, the court asked Barrientos, who was sworn under oath, if he understood the charges, to which he responded "yes, Judge." *Id.* at 13. If Barrientos had no intent to commit wire fraud as claimed in paragraph 1 of his § 2255 motion, he would not have pleaded guilty to such charges. Further, there was overwhelming evidence of Barrientos' guilt as the mastermind of this mortgage foreclosure fraud scheme. *See* ECF 99

and 99-1. Also in paragraph 1, Barrientos argues that he did "business" with Fidelity National Insurance Company because it was his coconspirator's business of choice. This assertion is not remotely a valid *Brady* claim; it is not suppressed evidence, it is not favorable to the accused, and it is not material. The Court should deny Barrientos' meritless *Brady* claim in paragraph 1 of his motion.

In paragraphs 2-3, Barrientos claims: his coconspirators were the individuals who originated the loans; that he "never touched any loan application;" and the homeowners acted without his knowledge to initiate the irrevocable payoff order. ECF No. 236 at 5. However, Barrientos was the mastermind of this fraud scheme, who created the concept for this "program," recruited other key conspirators, taught them how the scheme would work, exclusively controlled the bank account receiving all of the money from the fraudulent home sales (held in the name Sayraw Holdings), and generally was considered by senior participants in the fraud to be its leader. ECF 99-1 at 38, 40-42, 44-48, 60, 66, and 70. Like paragraph 1, the claims in paragraphs 2-3 should be denied since they do not involve suppressed evidence, that evidence is not favorable to the accused, and it is not material.

In paragraphs 4-5, the defendant argues that the government placed "accounts in [his] discovery files which belong to [his coconspirators]," and that the government "made it appear that only 3 people went to Hawaii when in reality 50 people went at company expense." ECF No. 236 at 5. The defendant misunderstands conspiracy law and the principles of *Brady v. Maryland* and its progeny. As set forth in Ninth Circuit model criminal jury instructions 11.1 and 11.6, for a defendant to be guilty of a conspiracy, it is not necessary for a conspirator to personally perform overt acts for the purpose of carrying out the conspiracy. Although, in this case, Barrientos did perform overt acts, such as directing his coconspirator to continue on with the fraud even after Capital Access received a cease-and -desist letter from California. ECF No. 99-1 at 40. Also, the entirety of the down payments for the scheme came not from the straw buyers, but from bank accounts held by Capital Access and a separate entity, Sayraw Holdings, controlled solely by Barrientos. ECF No. 77 at 23.

In accordance with *Brady*, the government has an obligation to produce all evidence upon request which is "favorable to the accused" and "material to either guilt or punishment." *Brady*, 373 U.S. at 87. The government provided voluminous discovery in this case. Paragraphs 4-5 actually are the opposite of a *Brady* violation since nothing was withheld from the defense or the court. In addition,

the defendant's argument that 50 individuals went to Hawaii at the expense of his company, Capital Access, only shows the extent to which he and others benefitted from this criminal scheme at the expense of countless victims. The Court should deny the claims in paragraphs 4-5 which fail to allege a *Brady* violation.

Barrientos' attempts to blame others throughout his § 2255 motion are not proper allegations of a *Brady* violation. Regardless of who opened the accounts, deposited money, or signed the loans, the defendant is still guilty for all the reasons mentioned above. The defendant failed to meet the burden required when alleging a *Brady* violation because he (1) failed to state what evidence the government withheld, and (2) whether that evidence was favorable to the defendant. Additionally, without knowing what evidence the defendant is claiming was withheld, there can be no assessment of its materiality. Therefore, the defendant's claims of a *Brady* violation must fail.

2. Barrientos cannot properly allege a *Brady* violation was made by his own counsel.

In paragraphs 1-3 under the hand-written header "Denial of Effective Assistance of Counsel," Barrientos attempts to allege a *Brady* violation against his own counsel for allegedly failing to disclose specific information to the court. ECF No. 236 at 7. However, there is no legal precedent that permits a defendant to allege a *Brady* violation against his own counsel. Again, defendant mis-understands the fundamental holding of *Brady v. Maryland*: "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at. 87 (emphasis added).

In paragraph 1, Barrientos alleges a *Brady* violation because he wants to substitute a generic "average foreclosure losses" "known among lawyer's circle" of "$58,000 per home" instead of the actual losses suffered by the victims in this case, proven through the investigation. That is not suppression of favorable evidence. This purported *Brady* claim against Barrientos' own counsel again fails. Paragraphs 2 and 3 on page 7, addressed substantively below, also allege a *Brady* violation was committed by the defendant's attorney, which is impossible. For these reasons, the unsupported claims in paragraphs 1 through 3 of page 7 should be denied.

### C. Barrientos Cannot Show That Trial and Appellate Counsel's Performance Was Not Based on Reasonable Professional Judgment.

#### 1. The standard for ineffective assistance of counsel claim.

To properly claim ineffective assistance of counsel, the defendant must show that (1) counsel's performance fell below "objective standards of reasonableness," and that (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The failure to satisfy either prong of the *Strickland* test results in a failed ineffectiveness claim; Barrientos fails to satisfy both.

Under the first prong, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Furthermore, the court must avoid "'the distorting effects of hindsight' and 'indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Smith v. Stewart*, 140 F.3d 1263, 1268-70 (9th Cir. 1998). In particular, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

#### 2. Trial counsel's decision not to obtain detailed reports of the defaulted $10 million, not to disclose specific evidence to the court, and not to provide the appeal counsel with the computer hard drive did not fall outside *Strickland's* wide range of professionally competent assistance.

Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Davis v. United States*, 417 U.S. 333, 687–88 (1974). To establish deficient performance, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.* at 689-690; *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986); *United States v. Schaflander*, 743 F.2d 714, 717-718 (9th Cir. 1984). Defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 685. There is a strong presumption that counsel's conduct fell within the wide range of reasonable representation. *Id.* at 689; *United States v. Cochrane*, 985 F.2d 1027, 1030 (9th Cir. 1993); *United States v. Hamilton*, 792 F.2d 837, 839 (9th Cir. 1986).

In paragraph 1, Barrientos argues that his trial counsel, Babineau, "never obtained a detailed breakdown of the $10 million defaulted amount." ECF No. 236 at 7. In paragraph 7, the defendant alleges that Babineau "did not complete the discovery process for Barrientos before pleading guilty." ECF No. 237 at 7. Additionally, in paragraph 11 the defendant alleges Babineau "did not provide the computer hard drive to [his appeal] lawyer and his son," and, in paragraph 13, Babineau "did not question the letter that Norma Rincard was sending to clients." ECF No. 236 at 9. However, Barrientos provides no evidence and cites no Ninth Circuit or Supreme Court case which holds, or suggests, that these alleged acts or omissions of Babineau do not fall within the wide range of reasonable professional judgment.

Babineau is a trial attorney with 24 years of experience litigating both state and federal cases. [1] In particular, she has many years of experience defending Federal white-collar cases and has represented clients at all stages. She has been named one of the top 100 National Trial Lawyers, Sacramento's "Best of the Bar," and Sacramento Top Lawyer for five years in a row.[2] Based on Babineau's achievements and extensive background in defending federal white-collar cases, it is clear that she was acting within the wide range of reasonable professional judgment when making the specific strategic decisions that Barrientos now criticizes.

Additionally, during Barrientos' change of plea hearing, he admitted under oath that he was fully satisfied with his counsel and the services she provided.

> THE COURT: Are you fully satisfied with the counsel, representation and advice given to you in this case by your attorney?
>
> THE DEFENDANT: Yes, Judge.

ECF No. 77 at 6.

a. Barrientos is not identically situated to any other defendants related to this case.

In paragraph 8, it appears that Barrientos is attempting to allege that he was misled from withdrawing his plea by an attorney who was never an attorney of record because he believed other

---

[1] https://apps.calbar.ca.gov/attorney/Licensee/Detail/190418.

[2] https://www.klblawoffice.net/.

defendants that were involved in his criminal scheme were receiving harsher sentences than they ultimately received. ECF No. 236 at 7. First, Barrientos does demonstrate that he was identically situated to any other defendants involved in his criminal scheme. In fact, as explained above and in ECF 99 and 99-1, the extensive investigation revealed that Barrientos was the <u>organizer and leader</u> of the elaborate scheme which defrauded and victimized countless financial institutions, federally insured financial institutions, homeowners, and other individuals. Barrientos created Capital Access and hired the other coconspirators whom he is attempting to argue he is identically situated to. Therefore, the defendant has not met his burden to establish that his constitutional right to effective assistance of counsel was violated through the circumstances alleged in paragraph 8.

3. **Appellate counsel exercised reasonable professional judgment in his representation of Barrientos.**

In paragraph 9, Barrientos argues that his appellate counsel, Gene Vorobyov, did not give him "any chance to provide any input on court filings." ECF No. 236 at 7. To meet the burden of showing ineffectiveness as required by *Strickland*, the defendant must show that attorney Vorobyov's decision to take certain actions related to his case without his prior consent is one that was made without exercising reasonably professional judgment. *Strickland*, 466 U.S. at 690. During court proceedings, attorneys often have to make timely decisions which do not allow time for consultation with their client. In this case, Barrientos was in custody, and Vorobyov acted within his power as Barrientos' appellate attorney to make decisions consistent with the exercise of reasonable professional judgment. Vorobyov has been a licensed attorney in the state of California for 23 years and is certified in Appellate Law by the State Bar of California. To become certified in a legal specialty, Vorobyov had to go beyond the standard licensing requirements and demonstrate "broad-based and comprehensive experience in [appellate law]." The certification process is rigorous and, if selected, the certified attorney must complete 36 hours of training every three years and recertify every five years by reporting compliance with the task, experience, and reference requirements. It is evident that Vorobyov is well versed in appellate law and made strategic decisions for the benefit of Barrientos' appeal. There is no legal requirement for an appellate attorney to allow a client to "provide any input on court filings;" indeed, the defendant provides no citation to any case so holding. Barrientos provides no evidence nor makes any allegations

which suggest Vorobyov was not acting with reasonable professional judgment while representing him on appeal; therefore, the claim in paragraph 9 is meritless and must fail.

4. **The actions or omissions of trial counsel as alleged by Barrientos did not affect the outcome of the judgment.**

In paragraphs 1-3, 7, 11, and 13, the defendant alleges specific acts and omissions by his trial counsel, Babineau, and attempts to argue their effect on the outcome of the judgment.

To prove prejudice, it is not enough for a defendant to show that errors or omissions had some conceivable effect on the outcome of the proceeding, as virtually every act or omission of counsel would meet that test. *Strickland*, 466 U.S. at 693; *United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1988). "He must show there is some reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *United States v. McMullen*, 98 F.3d 1155, 1157 (9th Cir. 1996). This standard is "rigorous" and "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86 at 112.

On January 12, 2018, Barrientos voluntarily and knowingly pleaded guilty to count 1 of the superseding indictment. ECF No. 77 at 21.

> THE COURT: How do you now plead to the charges in Count 1 of the indictment, guilty or not guilty?
>
> THE DEFENDANT: Guilty, Judge.
>
> THE COURT: It is the finding of the Court that the defendant is *fully competent and capable* of entering an informed plea, and that *his plea of guilty is a knowing and voluntary plea*, supported by an independent basis in fact, containing each of the essential elements of the offense. His plea is therefore accepted, and he is now adjudged guilty of that offense.

*Id.* (emphasis added).

Barrientos voluntarily chose to plead guilty to count 1 of the superseding indictment without any plea agreement from the government, in advance of a jury trial, and when facing overwhelming

evidence of guilt. In paragraph 11, Barrientos claims that his trial counsel failed to provide his appeal counsel with a computer hard drive which he was unable to review prior to pleading guilty because he had "insufficient time." ECF No. 236 at 9. However, Barrientos was indicted on April 14, 2016, remained out of custody, and did not enter his change of plea until January 12, 2018—almost two years later. The Speedy Trial Act requires in relevant part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense *shall commence within seventy days* from the filing date (and making public) of the information or indictment.

18 U.S.C. § 3161(c)(1).

Barrientos, who remained out of custody between being charged and changing his plea to guilty, had nearly two years to review all evidence being used against him. This gave the defendant ample time to determine whether he wanted to enter a guilty plea or proceed to trial. Each act and omission by Babineau alleged by the defendant in paragraphs 1-3, 7, 11 and 13 had no effect on the judgment in this proceeding. Barrientos argues that Babineau failed to question letters sent by one of his employees and failed to present contracts and bank signature authorization cards to the court which were contained in discovery files. The claims made in each of these paragraphs are facts which the defendant knew at the time of entering his change of plea, and are entirely consistent with a conspiracy to commit a fraud scheme. If these alleged errors had an effect on the judgment, Barrientos would have refused to plead and, instead, would have proceeded to trial. Nevertheless, the defendant continued forward with his change of plea, which further shows that the result of the proceedings would not have been altered.

Throughout his motion, Barrientos continues to argue alternate interpretations of the evidence in attempt to frame himself as not guilty of the offenses for which the grand jury indicted him. However, "the defendant must show that [the errors] actually had an adverse effect on the defense"; therefore, "it is not enough for the defendant to show that the errors had some *conceivable* effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693 (emphasis added). The defendant's argument that the "errors" of his trial counsel had an effect on his judgment are meritless. He repeatedly argues only interpretations of the facts and fails to offer any evidence or statement which proves that he would have

chosen not to enter the guilty plea had Babineau questioned the letters in evidence or further investigated the contracts and bank signature authorization cards. Even if he had claimed that he would have proceeded to trial, an objective analysis of these allegations indicates that these were not "unprofessional errors" of his counsel. The evidence of the scheme to defraud, and Barrientos' role in it, was overwhelming. For all the reasons mentioned above, the defendant has failed to meet his burden of establishing ineffective assistance of counsel in paragraphs 7, 11 and 13 of his motion.

**D. Barrientos' Miscellaneous Claims Are Meritless.**

In paragraphs 10 and 12, Barrientos alleges a conspiracy between his trial lawyer and the government. ECF No. 236 at 9. This claim is unsupported by facts or evidence which suggest any improper communication occurred between his trial counsel and the government that was not within the standard practice of reasonable professional communication between opposing counsel. Specifically, the defendant states that the government had a "ready made answer to [his] letter" of admission after his trial counsel had asked him the previous day to edit his letter. ECF No. 236 at 9. The fact that the prosecutor was an effective advocate at sentencing does not support defendant's wild hypothesis that his attorney conspired with the prosecutor. Furthermore, the government's response to Barrientos' admission letter had no impact on the judgment of his proceedings, nor did it prejudice his defense. Therefore, Barrientos has failed to meet his burden, and the claim in paragraphs 10 and 12 must fail.

Additionally, in paragraph 12, Barrientos alleges that the government told his trial counsel that "there was no crime committed but the operations of the business [were] improper." ECF No. 236 at 9. However, this claim is fully unsupported, and is completely contradicted by the detailed Superseding Indictment presented to the grand jury by the same prosecutor that Barrientos claims told his attorney that there was no crime committed. The government would not seek prosecution of an individual if no crime was committed, nor would the individual plead guilty and admit, under oath, that they committed a crime if they did not. Moreover, Barrientos' trial counsel would not advise him to plead guilty if there was no crime committed which could be proven at trial. Finally, District Judge Burrell would not have accepted a guilty plea from a defendant who did not commit a crime. Barrientos' claim in paragraph 12 is not cognizable, is conclusory, and is wholly unsupported by the facts and evidence presented in this case. Therefore, the claim of ineffective assistance of counsel must fail.

In paragraph 11, the defendant argues that his trial counsel failed to deliver a computer hard drive to his son despite written requests. ECF No. 236 at 9. However, trial counsel has no duty to deliver evidence to individuals whom she does not represent. Indeed, defendant does not provide any legal support for this claim. Babineau was acting within her reasonable professional judgment in choosing to refrain from delivering confidential evidence to uninvolved parties in the case. Therefore, the claim of ineffective assistance of counsel in paragraph 11 must fail.

**E. An Evidentiary Hearing is Unnecessary Because Barrientos' Conclusory Allegations Are Insufficient to Warrant a Hearing.**

Under 28 U.S.C. § 2255, an evidentiary hearing on the claims is required, "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the defendant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted). Conclusory assertions are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

In this case, Barrientos' claims are unsupported, conclusory, and fundamentally mis-state and misunderstand claims of *Brady* violations and ineffective assistance of counsel. Under these circumstances, a hearing on the matter is unnecessary. Each claim fails as a matter of law and does not raise any contested factual issues requiring an evidentiary hearing. Barrientos' request for an evidentiary hearing should therefore be denied.

## IV. CONCLUSION

For the reasons set forth here, the defendant has failed to demonstrate any *Brady* violations. Similarly, the defendant's motion fails to establish that his trial or appellate counsel provided ineffective assistance of counsel. Finally, the defendant has established no prejudice resulting from any of the claims. Barrientos' 28 U.S.C. § 2255 motion presents no facts that suggest any evidence was withheld by the government, nor does it present any facts which give rise to any cognizable ineffective assistance of counsel claim. The defendant's claims make it clear that all evidence was available to the court and

the defense as necessary during these proceedings. Furthermore, the facts of this case make it clear that Barrientos had more than adequate counsel who exercised reasonable professional judgment in making strategic decisions which favored the defendant. In the alternative – assuming counsel's conduct was unreasonable – Barrientos provided no evidence showing the errors prejudiced the defense. Therefore, the defendant has failed to meet his burden, and his § 2255 motion must be denied.

Dated: June 24, 2022

PHILLIP A. TALBERT
United States Attorney

By: /s/ *CHRISTINA MCCALL*
CHRISTINA MCCALL
Assistant United States Attorney

PHILLIP A. TALBERT
United States Attorney
CHRISTINA MCCALL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SERGIO ROMAN BARRIENTOS,<br><br>Defendant. | CASE NO. 2:16-CR-00046-TLN-CKD<br><br>CERTIFICATE OF SERVICE |

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers. She also certifies that on June 24, 2022, a copy of the GOVERNMENT'S OPPOSITION TO DEFENDANT'S 2255 MOTION was served by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Sacramento, California.

Addressee(s)
**Sergio Barrientos #55982-298**
FCI TERMINAL ISLAND
P.O. BOX 3007
San Pedro, CA 90733

/s/ *C. Buxbaum*
C. BUXBAUM